# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

GREGORY SMITH,

      Petitioner,

v.                                CASE NO:  8:10-CV-971-T-30MAP

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

_____/

# ORDER

      Petitioner, an inmate in the Florida penal system proceeding *pro se*, timely filed this petition (Dkt. #1) for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed on April 22, 2010.  The Court has considered the petition and memorandum of law, Respondents' response (Dkt. #16) filed on November 4, 2010, and Petitioner's traverse (Dkt. #21) filed on December 30, 2010.  Upon review, the Court determines that the petition must be denied because the claims are either procedurally barred or without merit.

# BACKGROUND

      Petitioner, Gregory Smith ("Smith") was tried by a jury and convicted of first degree murder, armed robbery with a firearm, and aggravated assault.  Smith was sentenced to consecutive terms of life imprisonment on the murder and armed robbery counts and to five years of imprisonment concurrent on the aggravated assault count.  Smith, through defense

counsel Amy C. Settlemire, Esquire ("Settlemire"), filed a Notice of Appeal in the Second District Court of Appeal. After the attorney submitted an *Anders* Brief, Smith filed his Initial pro se Brief, raising nine grounds for relief. The Second District Court of Appeal *per curiam* affirmed Smith's judgment and sentence. *Smith v. State*, 902 So.2d 806 (Fla. 2d DCA 2005).

Smith then filed a pro se Motion for Postconviction Relief pursuant to Florida Rule of Criminal Procedure 3.850. Smith alleged eight claims for ineffective assistance of counsel, claiming counsel was ineffective for: (1) failing to consult and/or secure an expert in the area of toxicology and ballistics; (2) failing to object to and thereby preserve for appeal improper prosecutorial remarks; (3) conceding guilt without his approval; (4) failing to inform him of his absolute right not to testify; (5) failing to file a Motion to Suppress incriminating statements and to object to their introduction at trial; (6) failing to object to and preserve for appeal a chain of custody violation; (7) failing to object to limiting the cross-examinations of Deborah Foster, the State's crucial witness; and (8) failing to object to and preserve for appeal the trial court's denial to give a requested jury instruction. The post-conviction court summarily denied claims seven and eight, and granted an evidentiary hearing on grounds one through six. Following the hearing, the court denied the Motion for Postconviction Relief.

Smith timely filed a Notice of Appeal of the denial of his 3.850 Motion for Postconviction Relief. In this appeal, Smith raised two main issues or grounds for relief stating that he was entitled to a new trial because: (1) he was prejudiced by the ineffective assistance of counsel in (a) conceding his guilt, and (b) failing to object to and preserve

record of trial errors; and (2) the trial court erred in summarily denying claim 7 without leave to amend.  Basically, Smith addressed the denial of four of the eight grounds raised in his original Rule 3.850 motion.  The Second District Court of Appeal *per curiam* affirmed. *Smith v. State*, 18 So. 3d 1048 (Fla. 2d. DCA 2009).

On April 22, 2010, Smith filed this Petition for Writ of Habeas Corpus pursuant to 28 § 2254, asserting eight grounds for relief with allegations of ineffective assistance of counsel and violations of his right to due process, equal protection, and fair trial, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

## Procedural Bar

Under 28 U.S.C. 2254(b) and (c), a petitioner is required to exhaust all available state court remedies for challenging a conviction before bringing a habeas corpus action in federal court.  "To properly exhaust a claim, 'state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.'" *Maples v. Allen*, 586 F.3d 879, 886 (11th Cir. 2009) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).  If a claim is not exhausted, it is procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).  There are two ways to overcome the procedural bar: "(1) an adequate cause for and actual prejudice arising from the default, or (2) that a miscarriage of justice, caused by a substantial denial of constitutional rights." *Lynd v. Terry*, 470 F.3d 1308, 1313-14 (11th Cir. 2006).  Smith, however, does not assert cause, prejudice, or a miscarriage of justice.

Grounds One, Four, Five, and Eight were raised on Smith's 3.850 motion for postconviction relief, but were not raised on appeal.  Thus, unlike the remaining grounds, they are unexhausted and procedurally barred from being brought on this § 2254 petition. Smith also has failed to show cause and prejudice to overcome the procedural bar.  However, even if these claims were not procedurally barred, they would have failed for lack of merit for the reasons set forth below.

## Standard of Review

Smith alleges a denial of his constitutional Sixth Amendment right to counsel.  The standard to determine whether the right to effective assistance of counsel has been violated is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).   Counsel is presumed competent to assist a defendant; the burden is on the petitioner to demonstrate the denial of the effective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 658 (1984).  To vacate the conviction, the petitioner must show "by a preponderance of competent evidence," *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000), that (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) defendant was prejudiced by the deficient performance.  *Strickland*, 466 U.S. at 687, 694.

To satisfy the prejudice prong under *Strickland*, the accused must establish that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "There is no reason for a court deciding

an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing in one." *Id.* at 697.

**Ground One:        Counsel failed to consult and/or secure an expert in the area of toxicology and ballistics.**

Smith fails to carry his burden under *Strickland* of establishing that counsel was ineffective for failing to consult and/or secure an expert in the area of toxicology and ballistics.  Smith contends that a toxicology expert could have explained the cause and effect of the use of alcohol and cocaine on the victim's aggressiveness, the witnesses' memories, and Smith's intent and rationale.  Smith claims that a ballistics expert could have rebutted the fact that the gunshot occurred beyond three feet of the victim.  Smith also asserts that witness Deborah Foster performed an "ignorant version of CPR" on the victim, and that a ballistics expert could have been used to see if the small caliber bullet would have been fatal absent the additional damage done by Foster's actions.

At the evidentiary hearing, Settlemire testified she did not think hiring a ballistics or toxicology expert would help or add anything to their case.  Smith also admitted that he did not talk to Settlemire about hiring experts to rebut any of the other testimonies from the prosecution.

Regardless, Smith is merely speculating.  Smith presents no affidavits or proof that show had Settlemire consulted or secured these experts, the outcome of his trial would have been different.  Additionally, the Supreme Court recently stated that the failure to consult experts in developing defense strategy to murder prosecution or to offer testimony at trial

was not deficient performance of counsel, was not an unreasonable application of *Strickland*, and thus did not warrant federal habeas relief. *Harrington v. Richter*, 131 S. Court. 770, 178 L. Ed. 624 (2011); *see also Duran v. Walker*, 223 F.App'x. 865 (11th Cir. 2007). Since Smith cannot specifically demonstrate that either Settlemire performed deficiently or he was prejudiced, Smith cannot meet the standard of *Strickland*. Thus, claim one fails.

**Ground Two:** **Counsel failed to object to and thereby preserve for appeal improper prosecutorial remarks.**

Smith alleges ineffective assistance of counsel due to counsel's failure to object to four improper prosecutorial comments. They are all without merit.

First, Smith contends that Settlemire should have objected when the prosecution called him a liar, stating "[d]efendant cannot look the jury in the eye." At the evidentiary hearing, Settlemire testified that she did not think that the statement was egregious, and that she normally only objects when it is something extreme. The court not only found Settlemire's testimony to be credible, but also that the prosecutor's statement was a permissible comment on Smith's demeanor while on the stand. Moreover, Smith fails to demonstrate how counsel's performance was deficient in failing to object to a permissible statement by the prosecutor. Thus, this claim is without merit.

Second, Smith contends that Settlemire should have objected to the statement by the prosecutor during his closing argument, "[y]ou know, we had a particular juror in jury selection who said, I can't even think of a time when he wouldn't mean to do that." It seems that the prosecutor simply repeated a comment made by a potential juror during voir dire,

possibly in reference to the shooting of the victim by Smith.

Settlemire stated that she did not remember the context of this statement or to what it referred.  The trial court correctly determined that the prosecutor's statement about the comment from the potential juror was not so egregious to warrant an objection.  The trial court also found, as this court concludes now, that Smith failed to demonstrate how the outcome of the trial would have been different had Settlemire objected.  Thus, this claim fails.

Third, Smith asserts that Settlemire should have objected to the statement, "[f]olks, are you surprised it's an accident defense?"  When asked if she felt the prosecutor was mocking her defense, Settlemire testified that she explained in her opening that Smith was going to testify that it was an accidental shooting.  She testified that since she had already espoused the accident defense theory to the jury, the prosecutor's statement was no big surprise.

Settlemire also testified that she did not object as a matter of strategy.  Strategic decisions do not constitute ineffective assistance if alternative courses of action have been considered and rejected."  *Rutherford v. State*, 727 So. 2d 216, 223 (Fla. 1998).  Either way, Smith failed to demonstrate how he was prejudiced or how objecting to this statement would have changed the outcome of the proceedings.  As such, this claim is without merit.

Lastly, Smith contends that Settlemire allowed the prosecution to bolster the credibility of witness Deborah Foster when the prosecutor stated that Foster answered all questions truthfully and looked the jury in the eye.  With respect to the prosecutor's

statements, Settlemire stated "I think the record speaks for itself," and testified that she did not object as a matter of strategy.

Again, Settlemire testified that she does not usually object unless it is something extreme. "Tactical or strategic decision of counsel do not justify postconviction relief on the grounds of ineffective assistance of counsel." *Mazard v. State*, 649 So. 2d 255 (Fla. 3d DCA 1995). Moreover, Smith fails to demonstrate how Settlemire's failure to object to this statement resulted in prejudice. An objection would not have changed the fact that there was eyewitness testimony from Deborah Foster that Smith shot the victim. Since Smith can't show how the outcome of the trial would have been different had Settlemire objected, the claim is meritless.

In his Traverse, Smith states that Settlemire never described what she considers to be "extreme," in reference to when she chooses to object. This does not matter, because decisions concerning trial strategy or tactics still ultimately rest with counsel. Even if Settlemire did explain exactly what she considers extreme, Smith does not demonstrate how this definition would illustrate Settlemire's deficient performance and how it prejudiced the outcome of his trial.

Smith also cites a case in his Traverse that states that "prosecutors may not directly or indirectly express their opinions as to the credibility of witnesses or guilt of defendant[s]." *Martinez v. State* 761 So. 2d 1074 (Fla. 2001). Even if it is determined that the prosecutor in this case did both, *Martinez* does not state that his counsel can be deemed ineffective because of his or her failure to object to such statements.

Smith continues to say that Settlemire can't "hide behind strategy when the established law says it's improper."  However, Smith has presented no case law holding that counsel's failure to object to these types of statements amount to counsel being constitutionally ineffective.  And, it is well established that, "[i]n reviewing counsel's performance, the court must be highly deferential to counsel." *Spencer v. State*, 842 So. 2d 52, 61 (Fla. 2003).

Considering all of the claims, ground two for ineffective assistance of counsel is without merit.  Smith fails to meet the standard set forth in *Strickland*, since he cannot demonstrate how failure to object to any of these statements are either deficient performance or would have changed the outcome of his proceedings at trial.  As such, ground two fails.

**Ground Three:       Counsel conceded guilt without Petitioner's approval.**

Smith asserts that Settlemire inadvertently admitted his guilt during closing arguments by conceding that he had met the elements of robbery.  Smith argues that this exposed him to the primary felony murder charge and thus prejudiced him at trial since Settlemire allegedly admitted the underlying felony offense of robbery.

Settlemire testified that she did not believe that she conceded Smith's guilt to the robbery during closing arguments.  Actually, it was Smith, on cross-examination, who admitted taking the victim's pants and money (Smith claimed part of the money was his, which implies that the remainder belonged to the victim).  Moreover, Smith acknowledges that Settlemire argued that Smith did not commit a robbery and the gun accidentally went off.

In his Traverse, Smith cites to *Williams v. State*, 974 So. 2d 405, 407 (Fla. 2d DCA 2007) and claims it states that "defendant's credibility can't be denied due to attorney's

reputation alone." In *Williams*, the appellate court ruled that the lower court erred in likely relying on an attorney's reputation for being a competent attorney as reason for determining that the defendant's testimony about his attorney's misadvice was not credible. *Williams* at 407. *Williams* is unlike the instant case because here the state court did not rely on Settlemire's reputation in finding her testimony was credible and that she did not concede Smith's guilt.

Contrary to Smith's allegations, it is not whether Smith consented to a trial strategy that allegedly involved conceding guilt, but whether that was a reasonable trial strategy under the circumstances presented. The trial court determined that Settlemire's actions amounted to trial strategy that was reasonable under the circumstances. This Court agrees. Thus, Smith has failed to demonstrate how Settlemire performed deficiently, and therefore does not meet the *Strickland* standard. Claim three is without merit.

**Ground Four:**     **Counsel failed to inform Petitioner of his absolute right not to testify.**

Smith has failed to establish that counsel was constitutionally ineffective for allegedly failing to inform him of his absolute right not to testify. Smith contends that Settlemire ordered him to testify although he informed counsel that he was reluctant to take the stand. He also asserts that Settlemire, in her opening statement, committed him to testifying.

Smith is factually wrong. At the evidentiary hearing, Settlemire testified that she did talk to Smith about his right to testify or not testify at trial. She stated she always tells her clients it is their decision whether or not to testify. She also testified that Smith ended up

taking the stand, but she did not force him.  Furthermore, Settlemire said she explained to Smith that if he chose not to testify, the judge would instruct the jury they could not hold that against him as an inference of guilt and that the State would still have the burden to prove the case.

Smith testified that he told Settlemire he did not want to take the stand because he had an issue with speaking in front of people.  He also testified that Settlemire told him he needed to testify to let the jury know his side of the story.  But, he admitted that Settlemire told him that he didn't have to testify because it was still the State's burden to prove his guilt.  Thus, Smith is factually incorrect and has failed to show how Settlemire performed deficiently.  As such, claim four fails.

**Ground Five:**      **Counsel failed to file a Motion to Suppress incriminating statements and to object to their introduction at trial.**

Smith has not demonstrated that counsel was constitutionally ineffective for failing to file a Motion to Suppress incriminating statements and to object to their introduction at trial. He argues that he did not receive a recitation of his *Miranda* rights prior to making the incriminating statements.  He argues that these statements prejudiced him because they were used to attack his credibility.

Smith also states that Tampa Police Department Sergeant Julia Massucci testified that Smith "had some minor scratches and. . . a red mark on his forearm," and that Smith had a "scabbed over injury on his right elbow" and "a red mark on the left elbow" when arrested three days later after the shooting.  Smith contends that these statements should have been

suppressed prior to trial.  Smith argues that suppressing these statements would have been consistent with his chosen "accident" defense theory.

First, Settlemire testified that Smith never gave her any indication or basis to file a motion to suppress his incriminating statements.  She also testified that Smith was aware that his prior statements to law enforcement could be used against him if he testified.  Moreover, when asked if Settlemire ever discussed with him that the State could introduce any of his prior statements to impeach him to or attack his credibility, he responded "I think so, I'm not sure." Smith has not shown that Settlemire performed deficiently.

Second, Settlemire could not have suppressed Sergeant Massucci's statements before trial because Massucci's testimony consisted of factual statements based on her observation of Smith and were admissible.  Even if these statements had been excluded from evidence, Smith fails to clearly explain what that would have done for his case and how it would have changed the outcome.  Smith does not demonstrate to a reasonable probability that the jury would have reached a different result.  As such, ground five fails.

**Ground Six:**        **Counsel failed to object and preserve a chain of custody violation.**

Smith asserts that Settlemire should have objected when the court denied her request for a bench conference, which would have been to discuss the existence of a missing white T-shirt that the victim had allegedly been wearing that had not been examined.  Smith contends that, by way of "gunshot pattern testing," this missing white T-shirt would have shown that the victim was shot at close range, which would support his accidental shooting defense theory. Smith contends that he was prejudiced by Settlemire's failure to investigate and find the

missing white T-shirt.  He also claims that Smith failed to object and preserve the issue for appeal.

Not only does he assert that Settlemire failed to properly search for the white T-shirt, he claims the State found it and either destroyed it or intentionally misplaced it.  Thus, he believes that Settlemire should have requested a Richardson hearing pursuant to *Richardson v. State*, 246 So. 2d 771 (Fla. 1971), and moved for sanctions due to a Brady violation.  *Brady v. Maryland*, 373 U.S. 83 (1963).  Basically, Smith contends that the white T-shirt was discoverable by both sides and was never produced at discovery or as evidence at trial.

Again, Smith is merely speculating.  Smith has failed to produce any concrete evidence about this white T-shirt or what was on it.  He guesses that it would show gun shot residue and, if so, what some expert might conclude from it.  That type of speculation is insufficient.  And testimonies from Settlemire, Sergeant Julia Massucci, and Officer John Touchton provide no specific information that proves there was a white T-shirt present at the scene of the crime that was missing from evidence.  It is unclear whether or not anyone could have actually found this alleged white T-shirt.

Smith also asserts that the State should have known of the missing white T-shirt because it was referenced in various discovery documents produced by the State.  Smith, however, does not point to discovery documents that actually reference a "white T-shirt."  "Attachment A" that was submitted with Smith's Traverse points to a "shirt" or "T-shirt," but never specifically to a "white T-shirt."

Settlemire testified that she did not think there was a Brady violation or a discovery violation.  Moreover, she also testified to the fact that there was no shirt in evidence to argue that there was a discrepancy in the evidence.  Even if the State had destroyed or intentionally misplaced this alleged T-shirt, it would be difficult to prove that Settlemire's performance "fell below an objective standard of reasonableness" by not objecting to the denial of a bench conference.  *Strickland*, 466 U.S. at 668.  Additionally, Smith can't show that the production of this white T-shirt would have changed the outcome of his trial.  He doesn't have the shirt or an affidavit proving that the T-shirt would have made a difference in the trial.

The trial court also held that Smith failed to demonstrate that the State committed a discovery violation or Brady violation based on the testimony presented at both evidentiary hearings.  Furthermore, since this alleged T-shirt was never found in the first place, this does not amount to a chain of custody violation.  Thus, Smith does not meet the standard under *Strickland* because he failed to demonstrate that Settlemire acted deficiently when there was no chain of custody violation, no discovery violation, and no Brady violation.  Since "the burden rests on the accused to demonstrate a constitutional violation," claim six fails.  *Cronic*, 466 U.S. at 658.

**Ground Seven:     Counsel failed to object to limiting the cross-examinations of Deborah Foster, the State's crucial witness.**

Smith also does not meet his burden under *Strickland* to demonstrate that counsel's performance was deficient for failure to object to the trial court's limitation of Deborah Foster's testimony on cross-examination.  Smith argues that the trial court should have allowed

Settlemire to impeach Foster on cross-examination.  Smith contends that Foster's testimony on cross-examination was inconsistent and that counsel's failure to object prejudiced him because it did not allow Foster's credibility to be undermined.

However, the record shows that the trial court did not limit Foster's testimony on cross-examination.  The record actually indicates that Settlemire did attempt to impeach the witness based on her deposition testimony by suggesting that her statement was inconsistent with her testimony in court.  The record also reflects that Foster's statement wasn't necessarily inconsistent; she just couldn't remember her previous statement.  Thus, the trial court did not limit her testimony on cross-examination because she could not remember what she had previously said, not necessarily because she was being inconsistent.

Additionally, trial courts have discretion to limit cross-examination under the Sixth Amendment's Confrontation Clause to protect against factors such as prejudice, confusion of the issues, and interrogation that would be repetitive or only marginally relevant.  *Childers v. Floyd*, 08-15590, 2011 WL 2162083 (11th Cir. June 2, 2011).  The Confrontation Clause guarantees only an opportunity for effective cross-examination, not one that is effective whatever way, and to whatever extent, the defense might wish.  *Childers*, 08-15590, 2011 WL 2162083.

Settlemire can not be deemed ineffective because Smith disagrees with the way she responded to the court's treatment of Foster not remembering her previous statements in court.  Regardless, Smith still fails to show how Settlemire's performance was unreasonably deficient and that her performance prejudiced the outcome of his trial. Thus, claim seven is without

merit.

**Ground Eight:**    **Counsel failed to object and preserve the trial court's denial to give a requested jury instruction.**

Smith argues that the trial court erred in failing to give a requested jury instruction for theft. He contends that Settlemire failed to object and thereby did not preserve the issue for appellate review.

Smith is factually incorrect. The trial court did give the jury instruction to theft. The jury instruction that was denied was Settlemire's request for an instruction on culpable negligence.

Moreover, Smith does not point to any part of the record that shows or supports his allegation that Settlemire failed to object and preserve an issue for appeal. Smith does not demonstrate how Settlemire performed deficiently. Thus, this claim does not meet the standard set forth by *Strickland*, and Smith's claim is without merit.

## <u>CONCLUSION</u>

Smith has not met his burden under *Strickland* to show that his trial counsel was constitutionally ineffective.

It is therefore ORDERED AND ADJUDGED that:

1.    The Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Dkt. #1) is DENIED.

2.    The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA). Id.  "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal in forma pauperis.

**DONE** and **ORDERED** in Tampa, Florida on July 12, 2011.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

*F:\Docs\2010\10-cv-971.deny 2254.wpd*